UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | :    Crim. No. 19-CR-201 (TSC) |
| v. | : |
| ALBERT PATRICK, | : |
| Defendant. | : |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing. For the reasons herein, the United States requests that the Court sentence the defendant to a period of 8 months of incarceration, to be followed by a period of supervised release. The government further requests that the defendant's sentence in the instant matter run concurrent to any additional period of incarceration that he may receive following a parole rescission hearing in D.C. Superior Court case number 1998 FEL 3651. The government is not requesting any fines or restitution in this case other than required court costs. In support of this sentence, the government states the following.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 12, 2019, a federal grand jury for the United States District Court for the District of Columbia returned a one-count indictment charging Defendant Albert Patrick with Escape from Custody, in violation of 18 U.S.C. § 751(a). On August 15, 2019, the defendant pled guilty to the sole count in the indictment, and pursuant to the parties' plea agreement, the government agreed to request that the defendant's sentence in the instant matter run concurrent to any additional period of incarceration that he may receive following a parole rescission hearing in D.C. Superior Court

case number 1998 FEL 3651.

On January 8, 1999, the defendant was sentenced to 30 years of incarceration after being convicted of armed robbery and possession of a firearm during the commission of a crime of violence, in D.C. Superior Court case number 1998 FEL 3651. The defendant began serving his sentence at Cumberland Federal Correction Institution in Cumberland, Maryland. On April 2, 2019, the defendant was transferred to Hope Village RRC to complete the remainder of his sentence with a projected release date of June 26, 2019. Prior to his transfer to Hope Village, the defendant signed a Furlough Application, acknowledging that while on furlough at Hope Village, (1) the furlough served as an extension of confinement, (2) he remained in the custody of the U.S. Attorney General, and (3) should he fail to remain within the extended limits of this confinement, it would be deemed an escape from custody, punishable under 18 U.S.C. § 751. On April 16, 2019, the defendant signed out of Hope Village at 9:56 a.m., to attend a program at Community Connections. Prior to leaving, the defendant was instructed that he was to return to Hope Village no later than 3:00 p.m., that same day. However, the defendant did not return to Hope Village, and was placed on escape status at 5:00 p.m. after staff members from the halfway house made several unsuccessful attempts to contact or locate the defendant. Thereafter, the defendant was arrested on May 9, 2019.

During the month that Defendant Patrick was on escape status, he made no attempts to turn himself in to law enforcement – or to return to the halfway house. Instead, he was in the community with no supervision.

**DISCUSSION AND RECOMMENDATION**

**I.       Generally Applicable Legal Principles**

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a).  See United States v. Gall, 128 S. Ct. 586, 596 (2007).  The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>        (i) issued by the Sentencing Commission ...; and
>        (ii) that, . . . are in effect on the date the defendant is sentenced; ...
>
> (5) any pertinent policy statement –
>    (A) issued by the Sentencing Commission ... and
>    (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

**II.     Defendant's Sentencing Guidelines Calculation**

    **A.     Total Offense Level**

The base offense level for this offense is 13, pursuant to U.S.S.G. § 2P1.1(a)(1); *see* PSR ¶ 11. Four points are subtracted from that score because of the nature of the defendant's confinement (his placement at a halfway house), resulting in an adjusted offense level of 9. U.S.S.G. § 2P1.1(b)(3); *see* PSR ¶¶ 12, 16. An additional two points are subtracted from that score in light of the Defendant's acceptance of responsibility in this case, resulting in a total offense level of 7. U.S.S.G. § 3E1.1(a); *see* PSR ¶ 18-19.

    **B.     Criminal History Category**

Based on his prior convictions, Defendant Patrick has 7 criminal history points; however, two additional points should be added under § 4A1.1(d), resulting in a total score of 9 and criminal history category of 1V. *See* PSR ¶¶ 30-32.[1] Below is a summary of the defendant's previous convictions and points attributable to them.

- 1982 FEL 6910 – Robbery and Assault with a Dangerous Weapon –     0 points
- 1983 FEL 5354 – Armed Robbery and Assault with Intent to Rob –     0 points
- 1998 FEL 03651 – Armed Robbery and Possession of a Firearm During Violent

---

[1] In the event the Court were to not apply the two point enhancement, the total criminal history points would be 7 and Defendant Patrick would remain in Category IV. Therefore, his Guidelines range would also remain 8-14 months. It is the government's position that the two points are properly added. *See* United States v. Goldbaum, 879 F.2d 811, 813-814 (10th Cir. 1989) (rejecting "double counting" argument and concluding that "in the absence of any contrary intent we must apply the clear language of the guideline and presume that in formulating the base level specified for the crime of escape in Guideline § 2P1.1, the Sentencing Commission had in mind that under Guidelines §§ 4A1.1(d) and (e), points would be added to the particular defendant's criminal history category thereby enhancing the sentence."); United States v. Ofchinick, 877 F. 2d 251, (3d Cir. 1989) (also rejecting double counting argument). Moreover, given that these decisions are nearly 30 years old, had the Sentencing Commission believed that the Circuits were incorrectly adding the two points, it could certainly add language to the Guidelines (or add an Application note) that clarified that the enhancements do not apply to an Escape charge.

      Dangerous Offense –                                                                                      3 points

- 2015 CMD 5519 – Possession of a Cocaine –                                     1 point

- 2015 CMD 5869 – Shoplifting –                                                             1 point

- 2017 CMD 3252 – Second Degree Theft –                                          1 point

- 2018 CMD 9099 – Second Degree Theft –                                          1 point

**Total Criminal History Points:**                                                              **7 points**

The government also refers the Court to the information included in paragraphs 20 and 21 in the PSR.

      **C.**      **Sentencing Guideline Range**

A total offense level of 7 and criminal history category of IV, result in a guideline imprisonment range of 8 to 14 months. The guideline range is in Zone B. The guideline term of supervised release is 1 to 3 years. The maximum term of imprisonment under the statute is 5 years and the maximum term of supervised release is 3 years. *See* PSR ¶¶ 70, 79.

**III.**      **Sentencing Recommendation**

As stated above, the government requests a sentence of 8 months of incarceration, to be followed by a period of supervised release. This sentence is at the bottom of the Defendant's applicable guidelines range. The government further requests that the defendant's sentence in the instant matter run concurrent to any additional period of incarceration that he may receive following a parole rescission hearing in D.C. Superior Court case number 1998 FEL 3651.

      **A.**      **The Nature of the Offense**

The defendant left Hope Village on April 16, 2019, approximately two week after he had arrived. It was important for the defendant to remain at the halfway house for the designated

period of time to help support him as he transitioned back into the community. The goal of the halfway is to assist individuals as they transition from incarceration at the Bureau of Prisons and return to the community.  The halfway house is designed to provide the necessary supports and structures so that when an individual is released, he has in place the tools and skills to succeed on supervised release (with the ultimate goal of reducing recidivism).  *See, e.g.*, S. David Mitchell, Impeding Reentry: Agency and Judicial Obstacles to Longer Halfway House Placements, 16 Mich. J. Race & L. 235, 237–38 (2011) ("Absent adequate attention to transitional services such as housing, employment, and substance abuse treatment, empirical research has indicated that approximately two-thirds of released offenders will recidivate within three years.") (citing Patrick A. Langan & David J. Levin, Bureau of Justice Statistics, U.S. Dep't of Justice, Pub. No. 193427, Special Report: Recidivism of Prisoners Released in 1994 1 (2002)).[2]

      The government recognizes that the charge of Escape is not one with an identifiable victim; however, the criminal justice system cannot operate in a fair manner if individuals can simply walk away from a properly adjudicated sentence without any consequences.[3] At the time the defendant left Hope Village, he had only been at the halfway house for approximately two weeks. The day he left, he was scheduled to attend a program at Community Connections – an organization that provides mental health, substance abuse, housing, primary health care and other services to members the community who are most in need of these services. Moreover the services available through halfway houses, such as those offered through Community Connections, provide

---

[2] In enacting the Second Chance Act, Congress recognized the importance of community correctional facilities (such as halfway houses) in assisting prisoners in transition into the community. Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657 (2008), § 251.

[3] In United States v. Ofchinick, 877 F. 2d 251, (3d Cir. 1989), the Court described the harm to the public of an Escape charge:  "[the] public suffers an ongoing harm so long as a person who should be in confinement is free, for the judgment of sentence imposed by the court for the underlying offense is continuously flouted."

necessary services during this period of transition; these services benefit not only the defendant, but also the community as a whole, by reducing the likelihood that the defendant will reoffend. *See* Jennifer Borges, The Bureau of Prisons' New Policy: A Misguided Attempt to Further Restrict a Federal Judge's Sentencing Discretion and to Get Tough on White-Collar Crime, 31 New Eng. J. on Crim. & Civ. Confinement 141, 142 (2005) (noting that halfway houses and community confinement centers "make the transition back into the community easier for offenders by allowing them to participate in work-release programs, community activities, treatment, and maintain ties to family members, including children or ill parents.").

### B. The History and Characteristics of the Defendant

There is no question that the defendant experienced numerous challenges in his upbringing as he has spent the majority of his life in prison. His contacts with the criminal justice system spans four decades. It is clear from the PSR that the defendant's contacts with the criminal justice system are rooted in his substance abuse and mental health issues (issues that have been pervasive for not only the defendant, but also at least for his father who had a chronic drinking problem). The defendant himself started drinking alcohol when he was only 13 years old, and eventually graduated to using a wide-array of controlled substances including marijuana, cocaine, PCP, heroin, and opioids.  Unfortunately, despite such a long history of substance abuse, the defendant has admittedly never completed a substance abuse program. While it is encouraging that the defendant was receiving some treatment and medication for his post-traumatic stress disorder while previously incarcerated, it is clear that additional intensive substance abuse treatment is well overdue in this case. Just a simple look at the sheer volume of disciplinary infractions, rearrests, and supervision violations that the defendant has previously incurred in school, while on supervision, and even while imprisoned unequivocally show that the defendant needs treatment –

not an extensive, additional period of incarceration. Given how deeply entrenched the defendant's addiction appears to be, the government would request that Defendant Patrick participate in drug and mental health treatment while incarcerated and when placed on supervised release. *See* PSR ¶ 86.

### C. The Need for the Sentence Imposed

Given the defendant's acceptance of responsibility in this case, the government believes that a sentence of 8 months of confinement (at the bottom of the guidelines range) is the appropriate sentence, to be followed by a period of supervised release. Furthermore, the government requests that the defendant's sentence in the instant matter run concurrent to any additional period of incarceration that he may receive following a parole rescission hearing in D.C. Superior Court case number 1998 FEL 3651.

Respectfully submitted,
JESSIE K. LIU
UNITED STATES ATTORNEY

By:   ____/s/_____
NICOLE BATTLE
NY Bar
Assistant United States Attorney
District of Columbia
Violent Crimes & Narcotics Trafficking Section
555 4th Street, NW, Room 4836
Washington, DC 20530
(202) 252- 6978
Nicole.battle@usdoj.gov